**In re Eugene ANTHONY and Arleen Anthony, et al.**

**1St Franklin Financial Corporation, Plaintiff,**

**v.**

**Locke D. Barkley, in her capacity as Standing Trustee of the Chapter 13 Estate of Eugene Anthony and Arleen Anthony, et al., Defendants.**

Bankruptcy No. 00–13385.
Adversary No. 02–1105.

United States Bankruptcy Court,
N.D. Mississippi.

Oct. 31, 2003.

Michael Leo Hall, Burr & Forman LLP, Birmingham, AL, Kristina M. Johnson, Watkins, Ludlam, Winter & Stennis P.A., Jackson, MS, for 1st Franklin Financial Corp.

Frank H. Coxwell, Coxwell & Associates, Harold J. Barkley, Jr., Todd Johns, Jackson, MS, for Locke D. Barkley.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is a motion filed by the plaintiff, 1st Franklin Financial Corporation (hereinafter "1st Franklin"), seeking summary judgment

against the defendant, Locke D. Barkley, in her capacity as Standing Trustee of the Chapter 13 Estate of Eugene and Arleen Anthony, et al. (hereinafter "Trustee"); a timely response having been filed by the said Trustee; and the court, having considered same, hereby finds as follows, to-wit:

## I.

### JURISDICTION

The court has jurisdiction of these adversary proceedings pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, as well as, the General Order of Reference issued by the United States District Court for the Northern District of Mississippi on July 27, 1984.

The adversary proceedings filed by 1st Franklin are "core" proceedings as defined in 28 U.S.C. § 157(b)(2)(A), (B), and (O). They are consolidated for the purpose of considering 1st Franklin's motion for summary judgment.

## II.

### PROCEDURAL BACKGROUND

The defendant was duly appointed as the Chapter 13 Trustee in each of the twenty-one separate bankruptcy cases that are directly related to the above captioned adversary proceedings. In each case, this court entered an order confirming the debtors' Chapter 13 debt adjustment plans. In nineteen of the twenty-one cases, 1st Franklin filed proofs of claim which were addressed by the respective confirmation orders. The Trustee also filed motions to allow the claims of 1st Franklin in each case, and separate orders were entered sustaining these motions. This latter proceeding is routinely undertaken by Chapter 13 Trustees in numerous judicial districts. One motion is filed in each case which includes all creditors filing proofs of claim. No hearing is conducted, and a single form order is entered in each case. To illustrate this procedure, a sample copy of a motion and the related order are appended as exhibits to this Opinion.

Subsequently, the Trustee obtained permission to file lawsuits against 1st Franklin on behalf of the twenty-one bankruptcy estates. This permission was specifically subject to any affirmative defenses that might be raised by 1st Franklin. One of the primary purposes of the Trustee's lawsuits is to augment the respective debtors' bankruptcy estates through the perceived recovery from 1st Franklin so that the distributions to all of the creditors in the twenty-one cases will be significantly enhanced.

1st Franklin thereafter filed an adversary proceeding in each of the twenty-one cases seeking to enjoin the Trustee from pursuing her causes of action. 1st Franklin has asserted that the Trustee's intended lawsuits are barred by events that occurred during the administration of the underlying bankruptcy cases, notably the entry of the orders confirming the debtors' Chapter 13 plans, and the entry of the orders sustaining the Trustee's motions seeking the allowance of 1st Franklin's claims. 1st Franklin has affirmatively raised the defenses of res judicata, judicial estoppel, waiver, and equitable estoppel, denominating these theories collectively as "prior adjudicatory defenses."

As a part of its complaint, 1st Franklin has also asserted that the Trustee should be compelled to arbitrate the disputes with 1st Franklin as required by the terms of the underlying loan documents executed by the respective debtors. This part of the proceeding has been deferred pending a decision relative to the "prior adjudicatory defenses."

## III.

### THE BASIS OF THE TRUSTEE'S CAUSE OF ACTION

The Trustee's proposed causes of action against 1st Franklin can best be summa-

rized through the sworn affidavit of Thomas Dye Gober, Senior Manager and Director of Fraud Examination and Forensic Accounting at the accounting and consulting firm of Dixon Odom, PLLC. Mr. Gober indicates that 1st Franklin was engaged in deceptive credit insurance transactions that violated the laws of the State of Mississippi and the NAIC Market Conduct Guidelines. In his affidavit, he identifies three separate categories in which the alleged violations occurred, to-wit:

1. **Overcharging premiums for credit life insurance**—First Franklin repeatedly sold credit life insurance with LEVEL coverage on DECREASING loans. The premium charged for level coverage is *twice* the premium charged for decreasing coverage. So, as the borrower makes payments on the loan, the amount of indebtedness decreases but the amount of coverage for which the borrower paid premiums remains at the original amount of the loan. It is my opinion that any credit life insurance coverage that is sold in excess of the indebtedness does not qualify as credit life insurance and was therefore sold as regular life insurance. It is likely that the agents representing First Franklin were not licensed to transact such regular life business. Selling level coverage on decreasing loans is onerous, deceptive and profits the seller to the detriment of the borrower.

2. **Overcharging premiums for credit disability insurance**—First Franklin repeatedly sold credit disability insurance at rates significantly in excess of the maximum rates permitted by law. Although calculated in such a way as to make it difficult to detect such excesses, a careful review of the charges and related laws shows such overcharges. First Franklin repeatedly charged premiums for a full year (or multiples of years) even though the debt was for less than a year (or less than a multiple of a year.) As an example, if the borrower's loan was for a term of nine months, First Franklin sold credit disability coverage for a full year rather than pro-rating for the nine months. If the loan was for 18 months, First Franklin sold coverage for 24 months. The fact that the coverage was for a term greater than the term of the loan was not disclosed. Selling disability coverage for terms greater than the term of the loan is onerous, deceptive and profits the seller to the detriment of the borrower.

3. **Overcharging premiums for credit property insurance by inflating personal property listed**—First Franklin repeatedly listed "personal property" items upon which they sold credit property coverage that appeared to have been listed on the loan documents for the sole purpose of justifying the premium charged for credit property coverage. The items appear to be unauditable with no identifying serial numbers, of minimal market value and perhaps fictitious. Actual examples of such "personal property" listed are "12x12 TAN CARPET," "12x12 LINOLEUM RUG," "GOLD ROBE NECKLACE W/NUGGET," "1-SET OF FUNK AND WAGNER ENCYCLOPEDIAS," "1 SET COMPTONS ENCYCLOPEDIAS," "1 BROTHER TYPEWRITER" and "ROD AND REEL WITH TACKLE." Credit property insurance is expensive and should not be charged based upon property for which the lender needs no coverage. To do so is onerous, deceptive and profits the

seller to the detriment of the borrower.

Notably, Mr. Gober stated that in his opinion neither an average consumer nor an educated professional could easily detect the manner in which 1st Franklin calculated and applied its overcharges for the aforementioned insurance premiums.

## IV.

### 1st FRANKLIN'S RECITATION OF UNDISPUTED FACTS WITH THE TRUSTEE'S RESPONSES

The following undisputed facts, posited by 1st Franklin, and the Trustee's responses were extracted from the respective memoranda submitted by the parties, to-wit:

1. *1st Franklin:* Prior to the filing of debtors' bankruptcy petitions, 1st Franklin had either made a consumer loan to each debtor or was a holder of a consumer loan some other finance company had made to the debtor. In each case, the debtor owed at least a portion of the loan to 1st Franklin as of the dates of the petition date.

 *Trustee's Response:* Trustee admits the allegations of Fact One.

2. *1st Franklin:* Each debtor then filed a Chapter 13 bankruptcy petition. In the schedules the debtor listed 1st Franklin as a creditor. However, nowhere did any debtor list a cause of action against 1st Franklin.

 *Trustee's Response:* Trustee admits the allegations of Fact Two, but would state that the debtors were unable to list their claims and cause of action against 1st Franklin due to the concealment of such claims by 1st Franklin.

3. *1st Franklin:* Each debtor also filed a proposed plan of reorganization which universally adjusted the debt-
or-creditor relationship between debtor and all of its creditors, including the debtor-creditor relationship between debtor and 1st Franklin.

 *Trustee's Response:* Trustee admits the allegations of Fact Three.

4. *1st Franklin:* Then, prior to confirmation, 1st Franklin filed a proof of claim in each debtor's bankruptcy case.

 *Trustee's Response:* Trustee admits the allegations of Fact Four.

5. *1st Franklin:* Each debtor's plan was confirmed, which confirmation order adjusted the debtor-creditor relationship between debtor and 1st Franklin. In each bankruptcy case, the confirmed plan of reorganization provides that 1st Franklin is to receive less than it was entitled under its contract.

 *Trustee's Response:* Trustee admits the allegations of Fact Five.

6. *1st Franklin:* The Standing Chapter 13 Trustee, Locke Barkley, then filed a motion to allow claims, which motion included the claim filed by 1st Franklin. Sometimes, the motion to allow claims reflects a lower amount than the amount for which 1st Franklin filed its claim. In such cases, the lower amount stated by the Trustee reflected some pre-confirmation order entered in the bankruptcy case. The motion to allow claims, at least with respect to 1st Franklin's claim, was granted without objection. In each case where 1st Franklin filed a proof of claim, 1st Franklin's claim was allowed in some amount. 1st Franklin's claim was and remains allowed.

 *Trustee's Response:* Trustee admits the allegations of Fact Six, except the last sentence "1st Franklin's claim

was and remains allowed." The Trustee contests the validity of 1st Franklin's claim due to the fraudulent insurance charges.

8. *1st Franklin:* Long after the confirmation order had been entered and the motion to allow claims had been granted in each debtor bankruptcy, the Trustee filed a motion to be allowed to pursue causes of action on behalf of the bankruptcy estates against 1st Franklin, which motion was granted without prejudice to any defense 1st Franklin chose to assert.

*Trustee's Response:* Trustee admits the allegations of Fact Eight and further agrees that the causes of action against 1st Franklin were discovered long after the confirmation order and motion to allow claims were granted by the court.

9. *1st Franklin:* The Trustee's counsel admitted that he determined the existence of the pre-petition causes of action against 1st Franklin solely by reviewing the 1st Franklin contracts attached to the proofs of claim filed by 1st Franklin. Thus, Trustee's file contains the facts giving rise to each pre-petition cause of action at the time the proof of claim was filed, which in each case occurred pre-confirmation and before the motion to allow claims.

*Trustee's Response:* Trustee admits the allegations of Fact Nine and states that the attorney for the Trustee discovered the causes of action against 1st Franklin long after the case was confirmed. The Trustee had no actual or constructive knowledge of the hidden fraud and deceptive business practices that were skillfully practiced by 1st Franklin. Until notified by counsel, the Trustee was unaware that 1st Franklin had:

I. Breached the implied covenant of good faith and fair dealing with the debtors.

II. Violated state statutes.

III. Charged level credit life premiums on decreasing debt.

IV. Rounded up credit disability premiums to a full year term on loan terms of less than twelve months.

V. Charged outrageous credit property insurance premiums on insignificant or non-existent property.

10. *1st Franklin:* The Trustee acknowledged at deposition and in pleadings that all the causes of action she seeks to assert arose prepetition.

*Trustee's Response:* Trustee admits the allegations of Fact Ten, but such admission of a pre-petition cause of action does not prohibit the Trustee from trying to right a wrong.

11. *1st Franklin:* Each cause of action arose at the time each debtor entered into the pre-petition loan transaction or transactions that are the basis of 1st Franklin's allowed claim against the debtor.

*Trustee's Response:* Trustee denies the allegations of Fact Eleven. Each . cause of action accrued when the Trustee received actual knowledge of their existence.

12. *1st Franklin:* In some of the cases, prior to confirmation, the bankruptcy court also entered a specific order regarding 1st Franklin's claim. The terms of these specific orders vary, but most of them expressly allow at least a portion of 1st Franklin's claim. None of them disallow 1st Franklin's claim in its entirety.

*Trustee's Response:* Trustee admits the allegations of Fact Twelve.

## V.

### THE DISTINCTIONS BETWEEN THE ADMINISTRATION OF A CHAPTER 13 BANKRUPTCY CASE AND A CHAPTER 11 BANKRUPTCY CASE

 In its motion for summary judgment, 1st Franklin relies heavily on numerous decisions rendered in Chapter 11 bankruptcy cases to support its position that the "prior adjudicatory defenses" preclude the Trustee's proposed causes of action. In this context, 1st Franklin has misread the holdings in two Fifth Circuit decisions, *Sun Finance Company v. Howard (In re Howard)*, 972 F.2d 639 (5th Cir.1992) and *Simmons v. Savell (In re Simmons)*, 765 F.2d 547 (5th Cir.1985), both Chapter 13 cases, which will be discussed more fully hereinbelow. Regardless, in order to better appreciate the differences in the administration of a Chapter 13 bankruptcy case as compared to the administration of a Chapter 11 bankruptcy case, the court would point out the following, to-wit:

1. The volume of cases per chapter filed and pending in the United States Bankruptcy Court for the Northern District of Mississippi reflects the extraordinary workload carried by the two Chapter 13 trustees:

| Calendar Year 2002 | Filed Per Year | Pending 12/31/02 |
| --- | --- | --- |
| Chapter 13 cases | 2,615 | 7,720 |
| Chapter 11 cases | 45 | 108 |

| Projected for Calendar Year 2003 | Filed Per Year | Pending At Year End |
| --- | --- | --- |
| Chapter 13 cases | 2,499 | 7,326 |
| Chapter 11 cases | 42 | 118 |

2. The timing of the filing of a Chapter 13 plan compared to the filing of a Chapter 11 plan:

*Chapter 13* The Chapter 13 plan generally must be filed by the debtor, who must be an individual, within 15 days of the filing of the bankruptcy petition. Payments to the Chapter 13 trustee are to commence within 30 days thereafter. (Rule 3015(b), Federal Rules of Bankruptcy Procedure, and § 1326(a) of the Bankruptcy Code.)

*Chapter 11* The debtor, who may be an individual, corporation, partnership, etc., has a 120 day exclusivity period to file a plan of reorganization, but this period is often liberally extended. After the expiration of the exclusivity period, any creditor or party in interest may file a Chapter 11 plan. Chapter 11 plans are usually not filed until several months after the bankruptcy case has been filed. Payments to creditors do not commence until after the plan has been confirmed. (Sections 1121(b) and (c) of the Bankruptcy Code.)

3. The timing of plan confirmation:

*Chapter 13* In the Northern District of Mississippi, in order to expedite distributions to creditors, plans are confirmed *before* the bar date to file proofs of claim by *non*-governmental creditors. This bar date occurs 90 days after the first date set for the first meeting of creditors for non-governmental creditors and 180 days after the order for relief for governmental creditors. (Rule 3002(c) Federal Rules of Bankruptcy Procedure.) Within this district, Chapter 13 plans are routinely confirmed within 60 to 90 days after the filing of the bankruptcy petition. There is no requirement that a disclosure statement be approved, and there is no solicitation of votes to obtain acceptances of the plan from the classes of creditors.

*Chapter 11* The debtor-in-possession or plan proponent must first file and obtain approval of a disclosure statement, setting forth background information about the debtor and the prospects for reorganization, before votes can be solicited for the approval of the Chapter 11 plan. The disclosure statement would necessarily include a listing and a detailed discussion of all causes of action that could be pursued by the debtor-in-possession since they would be considered assets that could potentially augment the bankruptcy estate. On many occasions, obtaining approval of the disclosure statement can require several hearings before the court. Once approval is obtained, ballots are disseminated so that the creditors and other parties in interest might vote to either accept or reject the proposed plan. (Rules 3016, 3017, and 3018, Federal Rules of Bankruptcy Procedure, and § 1125 of the Bankruptcy Code.) Only if sufficient votes accepting the plan are received can the plan be ultimately confirmed. This process can consume months and, in some cases, even years. (Section 1126(c) and (d) of the Bankruptcy Code.)

4. Plan modification post-confirmation:

*Chapter 13* The modification of a Chapter 13 plan post-confirmation is much more flexible than the modification of a confirmed Chapter 11 plan. A Chapter 13 plan may be modified even after the vast majority of plan payments have been made. While only the plan proponent or the reorganized debtor may propose a modification of a Chapter 11 plan, the debtor, the Chapter 13 trustee, or an unsecured creditor may propose a modification of a Chapter 13 plan. (Section 1329(a) of the Bankruptcy Code.)

*Chapter 11* A Chapter 11 plan cannot be modified after it has been "sub-stantially consummated." (Section 1127(b) of the Bankruptcy Code.) This means that once payments have been commenced to creditors under the confirmed plan, a subsequent modification is generally precluded. (Section 1101(2) of the Bankruptcy Code.) The modified plan "becomes the plan only if circumstances warrant such modification." (Section 1127(b) of the Bankruptcy Code.)

5. The timing of the bankruptcy discharge:

*Chapter 13* The Chapter 13 discharge does not occur until all payments are made under the plan. The timing of the discharge coincides with the flexibility afforded post-confirmation plan modifications.

*Chapter 11* A discharge in a Chapter 11 case usually occurs at the time that the plan is confirmed. This timing coincides with the finality intended for a confirmed Chapter 11 plan.

The foregoing discussion illustrates not only the substantial differences in the number of cases, but also the "fast track" flexible nature of a Chapter 13 case as compared to a Chapter 11 case. These distinctions are particularly significant when considering whether the "prior adjudicatory defenses" should be applied in the same manner in a Chapter 13 case as in a Chapter 11 case. The application of these defenses to the causes of action that the Trustee intends to assert against 1st Franklin will be addressed hereinbelow.

## VI.

### *DISCUSSION OF THE FIFTH CIRCUIT'S SIMMONS AND HOWARD DECISIONS*

As mentioned hereinabove, 1st Franklin asserted in its reply memorandum that the Fifth Circuit Court of Appeals had upheld

the concept of "prior adjudicatory defenses" in the cases of *Simmons v. Savell (In re Simmons)*, 765 F.2d 547 (5th Cir.1985), and *Sun Finance Co. v. Howard (In re Howard)*, 972 F.2d 639 (5th Cir.1992). 1st Franklin has apparently misread these two decisions.

In *Simmons*, the creditor, a plumbing contractor, held a pre-petition perfected statutory construction lien which encumbered the debtor's residence. The creditor timely filed a proof of claim asserting a secured claim, but filed no specific objection to the debtor's proposed Chapter 13 plan. The plan was thereafter confirmed without objection. The plan, which provided a 10% distribution to unsecured creditors, referred to the creditor's claim as unsecured and disputed. Much like the cases now before this court, the Chapter 13 trustee filed a motion to allow claims which listed the creditor's claim as unsecured. Once again, no objection was filed, and a separate order was entered approving the trustee's motion.

Subsequently, the debtor decided to sell his property, and the resulting title examination revealed the existence of the construction lien. The debtor filed an adversary proceeding in the bankruptcy court seeking to cancel the construction lien. The creditor answered and counterclaimed. The bankruptcy court refused to cancel the creditor's lien and held that the lien, which was perfected before the bankruptcy filing, was valid and enforceable.

On appeal, the debtor strenuously argued the binding effect of the confirmation order as set forth in § 1327(a) of the Bankruptcy Code. The Fifth Circuit disagreed, concluding that since no objection was filed to the creditor's claim that his lien passed through the bankruptcy unaffected. In essence, the Fifth Circuit did not give preclusive effect to the confirmation order or to the order sustaining the trustee's motion to allow claims because no independent objection to the creditor's proof of claim had been filed.

In *Howard*, the creditor, Sun Finance Co., Inc., held secured mortgages encumbering two parcels of real property owned by the debtors. The debtors filed a Chapter 13 plan which described the Sun Finance claim as secured, but disputed. The debtors listed, as an asset of the estate, a cause of action against Sun Finance for unfair and deceptive trade practices. The Chapter 13 plan provided that Sun Finance would be paid $500.00, as well as, that the debtors' cause of action against Sun Finance would be dismissed, all in full compromise of Sun Finance's secured claim. Sun Finance filed no specific objection to the plan, and the plan was confirmed by the bankruptcy court. When Sun Finance did not receive its anticipated payments, it filed a motion to lift the automatic stay to permit it to foreclose its mortgages. The bankruptcy court refused to lift the automatic stay, holding that the confirmation of the plan was res judicata as to the issues raised in Sun Finance's motion.

On appeal, the debtors relied on an earlier Fifth Circuit decision, *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir. 1987), in support of their contention that the confirmation of the Chapter 13 plan was res judicata as to the creditor who failed to object to confirmation. Sun Finance relied on the *Simmons* decision, discussed hereinabove, which essentially held that the claims objection processes set forth in § 502(a) of the Bankruptcy Code superceded the Chapter 13 confirmation provisions found in § 1327(a).

The *Shoaf* decision involved a Chapter 13 plan which invalidated a guaranty given by a third party to a creditor. That creditor objected to the provision at one hearing, but failed to object to the plan at the final confirmation hearing. Although the

Fifth Circuit noted that the bankruptcy court was without statutory authority to release the guaranty, it concluded that the plan confirmation was nonetheless res judicata as to the issue of the validity of the plan provision nullifying the guaranty.

The *Howard* court then quoted from its earlier decision in *Simmons* to the effect that a "secured creditor with a loan secured by a lien on the assets of a debtor who becomes bankrupt before the loan is repaid may ignore the bankruptcy proceeding and look to the lien for satisfaction of the debt." The court then concluded that the general applicability of res judicata to bankruptcy plan confirmation must yield to the proposition that a secured creditor could remain confident that its secured claim would be protected unless a party in interest objected. The court obviously elected to rely more heavily on its *Simmons* decision.

*See also, In the Matter of Cook (Boyle Mortgage Company, Through Its Servicing Agent Bancplus Mortgage Co. v. Cook),* Fifth Circuit Summary Calendar No. 93–7459 decided June 2, 1994, unreported decision. This is another case where the Fifth Circuit, following *Simmons* and *Howard,* refused to grant preclusive effect to a Chapter 13 confirmation order.

The foregoing discussion reflects that the Fifth Circuit has recognized that there can be exceptions to the preclusive effect generally given to prior confirmation orders. In addition, contrary to the position advanced by 1st Franklin, these decisions show that res judicata effect was not permitted in these Chapter 13 cases.

## VII.

### RES JUDICATA

 The Trustee's proposed causes of action against 1st Franklin are based on allegations of sophisticated fraud, perpetrated by 1st Franklin through its practice of deceptively charging inflated insurance premiums. These allegations are summarized hereinabove in the extract from Thomas Gober's affidavit. While the Trustee concedes that the factual information underpinning her allegations was contained in the contract exhibits appended to the proofs of claim filed by 1st Franklin prior to plan confirmation, she contends that she was completely unaware until long after confirmation that those documents contained evidence of the alleged scheme. From the discussion of the administration of a Chapter 13 bankruptcy case, one can see without difficulty that the Trustee had a very limited period of time, from the date that she was appointed as Trustee to the date of the confirmation of the Chapter 13 plans, to discover what 1st Franklin had been doing. The court would mention again the comment of Mr. Gober that in his opinion neither an average consumer nor an educated professional could easily detect the manner in which 1st Franklin had calculated and applied its charges for the insurance premiums. This must be considered also in view of the fact that there are literally thousands of proofs of claim filed in the Chapter 13 cases that are being administered by the Trustee. Thus, while 1st Franklin would like to mechanically apply the preclusive effect of the two orders that were entered in each of the twenty-one bankruptcy cases, this court, as a court of equity, must be concerned with not only the Trustee's asserted lack of knowledge of any potential causes of action against 1st Franklin, but, additionally, whether she had a reasonable opportunity to even discover the existence of the causes of action.

This court is familiar with the theories of res judicata, equitable estoppel, judicial estoppel, and waiver. Each of these defenses was discussed in *Eastover Bank for Savings v. Smith (In re Little),* 126 B.R. 861 (Bankr.N.D.Miss.1991). In *Little,* this

court, addressing the issue of res judicata, quoted from the Fifth Circuit's decision in *Southmark Properties v. Charles House Corp.*, 742 F.2d 862 (5th Cir.1984), as follows:

> Because appellants' present claim and the prior judgment involve the same principal transaction, appellants' claim is barred by res judicata, if the procedural system available to appellants in the reorganization proceedings permitted appellants to raise that claim in those proceedings.... *Appellants do not assert that they lacked such an opportunity and they clearly did not. Appellants had an "absolute and unlimited" right to be heard in the reorganization proceedings.* (emphasis added)

*Id.* at 871.

The court continued its reasoning as follows:

> If Southmark had violated the terms of its mortgage agreement with appellants, and had committed various fraudulent and unlawful acts with respect thereto, as appellants now allege, *appellants had ample opportunity to raise those facts as a defense to Southmark's claim,* and to request that the trustee assert whatever cause of action the debtor possessed in that regard against Southmark. Appellants instead chose to forego any objections to the assertion of Southmark's secured claim, or the sale of the Charles House property to Southmark. As a result, Southmark's interest was recognized by the trustee and Southmark was allowed to bid in its mortgage debt for the property, without opposition. As the Supreme Court stated in *Brown v. Felsen,* 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979), "[r]es judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Appellants cannot now undo a judicial decree which they had a full opportunity to contest, and chose not to.* (emphasis added)

*Id.* at 872.

Concerning the application of res judicata, this court is also familiar with the Fifth Circuit decisions in *Howe v. Vaughan (In re Howe),* 913 F.2d 1138 (5th Cir.1990); *Eubanks v. F.D.I.C.,* 977 F.2d 166 (5th Cir.1992); and *Bank of Lafayette v. Baudoin (In re Baudoin),* 981 F.2d 736 (5th Cir.1993), as well as, the Ninth Circuit Bankruptcy Appellate Panel decision in *In re Heritage Hotel Partnership I,* 160 B.R. 374 (9th Cir.BAP1993), all cited by 1st Franklin. While all of these decisions were applicable to Chapter 11 cases, with the exception of *Baudoin* (a Chapter 7 case), they each recognized, like *Southmark Properties,* that the party, against whom res judicata was being asserted, had a full and fair opportunity to raise the issue earlier, but chose not to do so.

In considering 1st Franklin's motion for summary judgment, this court must accept the Trustee's position that she did not have knowledge of any potential causes of action against 1st Franklin prior to the orders being entered confirming the debtors' Chapter 13 plans or sustaining her motions to allow 1st Franklin's claims. 1st Franklin takes the position that the Trustee's lack of knowledge is immaterial to its assertion of res judicata, particularly since the Trustee had 1st Franklin's proofs of claim available which ultimately revealed the premium overcharges. While 1st Franklin's position on this point may be "technically" correct, it completely ignores the proposition, articulated in the decisions cited hereinabove, that a party must have had an opportunity to raise the issue. If this court adopted 1st Franklin's position, the Chapter 13 Trustee would have had to

discover, investigate, and file a lawsuit to redress a complex undisclosed scheme within only a few short months. *This is a fraction of the time allowed by the applicable statute of limitations.* The other choice would be to delay confirmation for protracted periods of time to allow the Trustee to make appropriate investigations to the detriment of numerous creditors who would prefer receiving plan distributions much sooner than later. This approach would not be very practical or logical because in the vast majority of cases there would be no concealed predatory lending practice. Considering the timing factors in the factual scenario before this court, precluding the Trustee's proposed causes of action against 1st Franklin because of the entry of the confirmation orders and the orders allowing 1st Franklin's claims would exact an extraordinarily inequitable result.

## VIII.

### EQUITABLE ESTOPPEL, JUDICIAL ESTOPPEL, AND WAIVER

■ Concerning the theories of equitable estoppel and judicial estoppel, in *Little*, this court quoted *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3rd Cir.1988), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988), as follows:

We are also mindful of the equitable concept of judicial estoppel. This doctrine, distinct from that of equitable estoppel, applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation. *Scarano v. Central Railroad Co.*, 203 F.2d 510 (3rd Cir.1953); *USLIFE Corp. v. U.S.*

*Life Insurance Co.*, 560 F.Supp. 1302 (N.D.Tex.1983).

We conclude that Oneida's failure to list its claim against the bank worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect. Although we stop short of finding that, as the bank urges, Oneida's prior silence is equivalent to an acknowledgement that it did not have a claim against the bank, we agree that its current suit speaks to a position clearly contrary to its Chapter 11 treatment of the bank's claim as undisputed.

*Id.* at 419.

The Fifth Circuit expressly recognized the doctrine of judicial estoppel in *Ergo Science, Inc. v. Martin, et al*, 73 F.3d 595 (5th Cir.1996), where the court stated as follows:

Viewed in this light, the issue is more akin to judicial estoppel. The doctrine of judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding. *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993), *cert. denied*, 511 U.S. 1042, 114 S.Ct. 1565, 128 L.Ed.2d 211 (1994). We recognize the applicability of this doctrine in this circuit because of its laudable policy goals. The doctrine prevents internal inconsistency, precludes litigants from "playing fast and loose" with the courts, and prohibits parties from deliberately changing positions based upon the exigencies of the moment.

73 F.3d 595 at 598.

*See also, In the Matter of Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir.1999), and *Hall v. GE Plastic Pacific PTE Ltd., et al.*, 327 F.3d 391 (5th Cir.2003).

Judicial estoppel was recently applied by the Eleventh Circuit in *DeLeon v. Comcar Industries, Inc.*, 321 F.3d 1289 (11th Cir. 2003), to preclude a Chapter 13 debtor's post-bankruptcy cause of action against a former employer for discrimination and retaliation. The court determined that the debtor knew about the claim before filing bankruptcy and possessed a motive to conceal the claim from the court in order to reduce the payments to the estate's creditors. While this decision is absolutely correct, the facts differ radically from the scenario involving the Trustee herein and 1st Franklin.

The court's analysis of the issue of res judicata is also appropriate when considering the theories of equitable estoppel, judicial estoppel, and waiver. The trustee's complete lack of knowledge of the potential causes of action against 1st Franklin at the time of the entry of the confirmation orders and the orders allowing 1st Franklin's claims evidences that the Trustee is not *intentionally* taking an inconsistent position insofar as this court or 1st Franklin are concerned. Likewise, she did not *knowingly* waive the causes of action against 1st Franklin. Consequently, the theories of judicial estoppel, equitable estoppel, and waiver do not prohibit the Trustee from asserting her complaints.

## IX.

## CLAIMS RECONSIDERATION PURSUANT TO § 502(j) OF THE BANKRUPTCY CODE

No one knows exactly what the admissible evidence will eventually establish in the trial of the Trustee's proposed causes of action. Regardless, in deciding 1st Franklin's motion for summary judgment, the court has only the pleadings, the sworn affidavit, and the written memoranda to consider. In this limited context are the allegations, posited by the Trustee, that 1st Franklin engaged in a deceptive, surreptitious scheme to defraud the Chapter 13 debtors by charging inflated insurance premiums. If these allegations can indeed be substantiated, 1st Franklin would be culpable for filing fraudulent claims in this court. As such, these claims can be reconsidered pursuant to § 502(j) of the Bankruptcy Code, a provision not cited by either of the parties hereto in their memoranda. This section provides as follows:

(j) A claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case. Reconsideration of a claim under this subsection does not affect the validity of any payment or transfer from the estate made to a holder of an allowed claim on account of such allowed claim that is not reconsidered, but if a reconsidered clam is allowed and is of the same class as such holder's claim, such holder may not receive any additional payment or transfer from the estate on account of such holder's allowed claim until the holder of such reconsidered and allowed claim receives payment on account of such claim proportionate in value to that already received by such other holder. This subsection does not alter or modify the trustee's right to recover from a creditor any excess payment or transfer made to such creditor.

According to *In re Coffman*, 271 B.R. 492 (Bankr.N.D.Tex.2002), courts, including the Fifth Circuit, have likened the "cause" standard set forth in § 502(j) with the substantive requirements of Rule 9024 of the Federal Rules of Bankruptcy Procedure and Rule 60(b) of the Federal Rules of Civil Procedure. These rules are set forth as follows:

**Rule 60(b), Federal Rules of Civil Procedure**

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons; (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment of suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C. § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

**Rule 9024. Relief from Judgment or Order**

Rule 60 F.R. Civ. P. applies in cases under the Code except that (1) a motion to reopen a case under the Code or for the reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330.

If indeed, 1st Franklin filed fraudulent proofs of claim previously in the aforementioned twenty-one bankruptcy cases, then those claims can be reconsidered pursuant to § 502(j) of the Bankruptcy Code in keeping with the "cause" requirements specified by Bankruptcy Rule 9024 and Rule 60(b), Federal Rules of Civil Procedure. This, in effect, would allow the court to abrogate the effects of the confirmation orders and the orders previously allowing 1st Franklin's claims. See, *In re International Yacht and Tennis, Inc.,* 922 F.2d 659 (11th Cir.1991), *In re Zieder,* 263 B.R. 114 (Bankr.D.Ariz.2001), *In re Hernandez,* 282 B.R. 200 (Bankr.S.D.Tex. 2002), and *In re Knappen,* 281 B.R. 714 (Bankr.D.N.M.2002).

## X.

### CONCLUSION

For the reasons cited hereinabove, the court is of the opinion that the motion for summary judgment filed by 1st Franklin is not well taken. It will be overruled by a separate order entered contemporaneously herewith.